UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VETRIA R. TAYLOR,                )
                                            )
             Plaintiff,         )
                                            )
              v.                 )      No. 1:21-cv-00375-SEB-MG
                                            )
RYAN DIENHART, et al.,          )
                                            )
            Defendants.      )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendants' Motion for Summary Judgment [Dkt. 31].

Plaintiff Vetria R. Taylor, proceeding *pro se*, brings this action pursuant to 42 U.S.C.

§ 1983 against Defendants Officer Ryan Dienhart, Sergeant Keith Cutcliff, Detective

Christopher Winter, and Officer Katie Gourley, who are all employed by the Indianapolis

Metropolitan Police Department ("IMPD"), alleging that Defendants conducted a

warrantless search of her home in violation of the Fourth Amendment.

Defendants have moved for summary judgment on grounds that no constitutional

violation occurred and, even if the Court concludes that a constitutional violation did

occur, they are still entitled to judgment in their favor on qualified immunity grounds.

The Court granted Ms. Taylor's request for an extension of time to file her response to

Defendants' motion, but that deadline has now passed without a response having been

filed.  For the reasons detailed below, we <u>GRANT</u> Defendants' Motion for Summary

Judgment.

1

**Factual Background**

**Stabbing at Plaintiff's Residence**

Ms. Taylor is Ezekiel Taylor ("Ezekiel")'s mother.  On April 15, 2019, two days

after he had been released from prison, Ezekiel went to his mother's home located at 2323

Dawson Street, Indianapolis, Indiana.  Ezekiel's cousin (Ms. Taylor's nephew), Eddie

Young, was also present at the home.  Ezekiel and Mr. Young were smoking spice and/or

marijuana in the kitchen when Ezekiel began acting strangely.  Ezekiel then stabbed Mr.

Young in the back.  Mr. Young ran from the home and sought help from a neighbor on

the street.  Ms. Taylor took her grandson, who had been in another room in the home at

the time of the incident, and left the residence as well.

**Warrantless Search of Plaintiff's Residence**

Ms. Taylor and the neighbor attending to Mr. Young both called 911 shortly

thereafter and IMPD officers were dispatched to investigate the incident.  Officer

Dienhart was the first to arrive on the scene and upon his arrival, he observed Mr. Young

outside with blood and an apparent stab wound on his back.  Mr. Young was transported

to Eskenazi Memorial Hospital for medical attention.

After Mr. Young was taken to the hospital, Ms. Taylor approached Officer

Dienhart outside her home and informed him that, although she did not witness it, the

stabbing had occurred in her home.  Ms. Taylor told Officer Dienhart that Ezekiel is her

son, she is Mr. Young's "aunt," and Ezekiel's son, who was in the home at the time, is her

grandson.  According to Officer Dienhart, Ms. Taylor then consented to Officer

Dienhart's entry into her home to search for Ezekiel, whose location at the time was

unknown.  Ms. Taylor, however, testified in her deposition that she does not recall having consented to the search.  Officer Dienhart proceeded to enter Ms. Taylor's residence without a warrant but did not locate Ezekiel in the house.

**Search of Plaintiff's Residence Pursuant to Search Warrant**

Following Officer Dienhart's entry into Ms. Taylor's home, Detective Winter arrived on the scene to assess the situation and thereafter applied for and was granted by the state court a warrant to search the residence.  Detective Winter did not enter Ms. Taylor's home until after the warrant had been issued.

Officer Dienhart telephoned Sergeant Cutliff who was serving as the on-duty Sergeant that day and relayed to him the information regarding the incident.  Sergeant Cutliff proceeded to Eskenazi Memorial Hospital to interview Mr. Young regarding the incident.  Thereafter, Sergeant Cutliff traveled to the scene to inspect it pursuant to the search warrant secured by Detective Winter.

Officer Gourley, an evidence technician, arrived at Ms. Taylor's residence after the search warrant had been issued and photographed and recovered evidence from the residence, including two knives and clothing.

**The Instant Litigation**

Ms. Taylor, proceeding *pro se* and *in forma pauperis*, filed her complaint on February 12, 2021.  The Court screened her complaint pursuant to 28 U.S.C. § 1915 and permitted her Fourth Amendment unreasonable search claim to proceed against the individual officers.  Defendants moved for summary judgment on May 31, 2022.  Ms. Taylor moved for an extension of time to respond to the summary judgment motion,

which extension the Court granted.  That deadline has now passed without Ms. Taylor

having responded.  Accordingly, Defendants' uncontroverted motion for summary

judgment is ripe for ruling.

## Legal Analysis

### I.      Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for

summary judgment if it appears that no reasonable trier of fact could find in favor of the

nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate

the credibility of witnesses, id. at 255, but view the facts and the reasonable inferences

flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*,

573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

By supporting their motion for summary judgment with their Local Rule 56.1

statement, Defendants "shifted the burden of production" to Ms. Taylor.  *Raymond v.

Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (internal citations omitted).  Her

failure to respond to Defendants' motion "results in deeming admitted the uncontroverted

statements in [Defendants'] Local Rule 56.1 submission."  *Id.*  However, the

"nonmovant's failure to respond to a summary judgment motion … does not, of course,

automatically result in judgment for the movant."  *Id.*  "The ultimate burden of persuasion

remains with [the movant] to show that it is entitled to judgment as a matter of law."  *Id.*

## II.      Discussion

Ms. Taylor alleges in her complaint that Defendants violated her Fourth

Amendment rights by conducting a warrantless search of her home.  Defendants concede

that Officer Dienhart did enter Ms. Taylor's home without a warrant but contend that his

warrantless entry was not violative of the Fourth Amendment because of the existence of

exigent circumstances.  Because the remaining Defendants did not enter Ms. Taylor's

home until after a valid search warrant had been obtained, Defendants argue that they are

thus all entitled to summary judgment on Ms. Taylor's Fourth Amendment unreasonable

search claim.  As noted above, Ms. Taylor has not responded to Defendants' motion.

The Fourth Amendment provides that "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated."  It is well-established that "the ultimate touchstone of the Fourth

Amendment is 'reasonableness,'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006),

which "'generally requires the obtaining of a judicial warrant' before a law enforcement

officer can enter a home without permission." *Lange v. California*, 141 S. Ct. 2011, 2017

(2021).  The warrant requirement is, however, "subject to certain exceptions." *Brigham

City*, 547 U.S. at 403.

One such exception is for exigent circumstances.  This exception applies when

"the exigencies of the situation make the needs of law enforcement so compelling that [a]

warrantless search is objectively reasonable." *Kentucky v. King*, 563 U.S. 452, 460

(2011) (internal quotation marks and citation omitted).  Officers are permitted, for

example, to make a warrantless entry into a home to "prevent the imminent destruction of

evidence," *Brigham City*, 547 U.S. at 403, to "prevent a suspect's escape," *Minnesota v. Olson*, 495 U.S. 91, 100 (1990), or to ensure their own safety or to protect others from "imminent injury," *Riley v. California*, 573 U.S. 373, 388 (2014).  This is because, in such circumstances, "the delay required to obtain a warrant would bring about 'some real immediate and serious consequences'—and so the absence of a warrant is excused." *Lange*, 141 S. Ct. at 2017 (citations omitted).

"Whether the exigent circumstances exception justifies warrantless action is judged by an objective standard," to wit, "whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir. 2014).  For the exigency exception to apply, "[t]here must be a genuine need to forego the warrant process." *Id.*  "As an exception to the Fourth Amendment's warrant requirement, the burden is on the government to show that the warrantless entry is justified by exigent circumstances." *United States v. Patino*, 830 F.2d 1413, 1415 (7th Cir. 1987).

Here, the objective facts known to Officer Dienhart at the time he entered Ms. Taylor's residence without a warrant support the existence of exigent circumstances justifying his actions.[1]  Officer Dienhart had been dispatched to respond to multiple 911

---

[1] Defendants also claim that Ms. Taylor explicitly consented to the search before Officer Dienhart entered her residence.  Although consent is another exception to the warrant requirement, Ms. Taylor testified by deposition that she did not believe that she had consented to the search.  Taylor Dep. at 20:4–10.  Accordingly, this fact is in controversy, and, viewing the facts in the light most favorable to Ms. Taylor, we assume for purposes of deciding this motion that she had not consented to the search of her home.

calls reporting a stabbing at Ms. Taylor's address, including an emergency call from Ms.

Taylor herself.  When he arrived at Ms. Taylor's home, he found Mr. Young lying on the

ground outside, with a stab wound and blood on his back.  In response to Officer

Dienhart's inquiry as to who stabbed him, Mr. Young answered, "my cousin."  Ms.

Taylor confirmed that Mr. Young is her nephew and that the stabbing occurred inside her

home with her son, Ezekiel, present.  Ms. Taylor reported that she had left the home with

her grandson after the incident.  Ezekiel had last been seen in Ms. Taylor's residence and

it was unknown whether he had left the premises.[2]

Given these facts, a reasonable person in Officer Dienhart's position would

understand the situation to be fluid, with the possibility remaining that the suspect,

potentially armed with a knife, was still inside the home and posed a danger to himself or

others, including the police.  *See, e.g.*, *Bogan v. City of Chicago*, 644 F.3d 563, 571 (7th

Cir. 2011) ("The [exigent circumstances] doctrine has been applied to the escape of a

suspect and also to situations that pose a danger to the officers or to others.").  Under

these circumstances, it was objectively reasonable for a reasonable officer to believe "that

there was a compelling need to act and no time to obtain a warrant."  *Id.* (quotation marks

and citation omitted).  Because the undisputed facts objectively support the exigency

---

[2] In her amended complaint, Ms. Taylor alleged that she had "expressly notif[ied] police that
[her] son had left the scene before 'victim' did and before police arrival."  Dkt. 10 ¶ 3.  In support
of their motion for summary judgment, however, Defendants have adduced evidence that Ms.
Taylor told police that she had left the residence due to Ezekiel's erratic behavior and that he was
alone in the home when she left with her grandson and called 911.  There is no evidence in the
summary judgment record that Ms. Taylor at any point reported having seen her son leave the
scene prior to Officer Dienhart's entry into her home.  It is well-settled that "a non-moving party
may not rely solely on the allegations in [her] complaint to defeat summary judgment."  *Shermer
v. Ill. Dep't of Transp.*, 171 F.3d 475, 478 (7th Cir. 1999).

created by Ezekiel's unknown whereabouts and that exigency had not dissipated by the time Officer Dienhart entered Ms. Taylor's home, we hold that his warrantless entry for the limited purpose of clearing the premises was reasonable under applicable Fourth Amendment jurisprudence.

Moreover, once Officer Dienhart failed to locate Ezekiel in the residence and the exigency justifying his entry was over, law enforcement secured a search warrant before any of the other Defendants entered the home.  We therefore hold that the exigent circumstances doctrine applies to Officer Dienhart's initial warrantless entry into Ms. Taylor's home and that the remaining Defendants entered pursuant to a valid search warrant.  Accordingly, Ms. Taylor's Fourth Amendment unreasonable search claim cannot survive summary judgment.

## III.   Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment [Dkt. 31] is <u>GRANTED</u>.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:   _____3/8/2023_____     _____
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distribution:

VETRIA R. TAYLOR
4451 Duxbury Lane Apt. 210
Indianapolis, IN 46226

Amy Stewart Johnson
Frost Brown Todd LLP
asjohnson@fbtlaw.com

Barry F. McGinley
Frost Brown Todd LLP
bmcginley@fbtlaw.com

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtlaw.com

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov